UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:26-cv-21783-GAYLES

ELIGIO HAROLDO CHUN CALEL,

     Petitioner,

v.

MARCOS CHARLES, et al.,

     Respondents.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Petitioner Eligio Haroldo Chun Calel's Petition for Writ of Habeas Corpus (the "Petition"). [ECF No. 1]. Petitioner challenges his detention at Federal Detention Center in Miami ("FDC") without being afforded an individualized bond determination. *See generally id*. In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents[1] to show cause why the Petition should not be granted. [ECF No. 4]. Respondents filed a Response in Opposition to the Petition, [ECF No. 5], and Petitioner filed a reply, [ECF No. 6]. The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Petition is **GRANTED in part**.

---

[1] The Petition names Marcos Charles, Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Acting Executive Associate Director; Juan Agudelo, Interim Miami Filed Office Director; Charles Wall, Principal Legal Advisor for ICE's Office of the Principal Legal Advisor; Pamela Bondi, former U.S. Attorney General of the United States; Kristi Noem, former Secretary of the United States Department of Homeland Security; Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement; E.K. Carlton, Warden of FDC Miami Federal Prison; and John Doe, Custodian as Respondents. A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243. And in "challenges to present physical confinement," the Supreme Court has made clear that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also id.* at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Accordingly, E.K. Carlton, Warden of FDC Miami Federal Prison, is the only proper Respondent here. The other Respondents shall be dismissed. *See Jackson v. Chatman*, 589 F. App'x 490, 491 n.1

## I.  BACKGROUND

### A.  Petitioner's Immigration History in the United States

Petitioner, a Guatemalan national, entered the United States in 2003. [ECF No. 1]. He was not inspected, admitted, or paroled. *Id.*

Petitioner has a prior conviction from July, 2012, for driving under the influence of alcohol and several prior traffic infractions that are all resolved. [ECF No. 1-9].

On September 29, 2025, Petitioner was arrested for domestic battery in Palm Beach County, following a confrontation with his brother-in-law. [ECF No. 1 ¶ 37]. On October 15, 2025, the State Attorney's Office issued a "No-File" disposition of that case, declining to file formal charges. [ECF No. 1-10]. The next day, on October 16, 2025, Petitioner was transferred to the custody of Immigration and Customs Enforcement ("ICE").[2]

On November 14, 2025, Petitioner submitted a request for release to ICE based in part on humanitarian and family considerations.[3] [ECF No. 1-12]. In a follow up email, Petitioner's counsel informed ICE that Petitioner, a diabetic, was experiencing fainting episodes and vision loss and had attempted suicide while in custody. [ECF No. 1-13].[4] Petitioner alleges that Respondents failed to respond to his request. [ECF No. 1 ¶ 42].

Since his detention, Petitioner has filed two motions for bond with the Miami Krome Immigration Court. The immigration judge denied both requests finding the Immigration Court

---

[2] On October 2, 2025, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear for a removal hearing on February 2, 2026.

[3] Petitioner alleges that his twelve-year-old son has been clinically diagnosed with autism spectrum disorder and that his nine-year-old daughter has special educational needs. He has filed an Application for Cancellation of Removal for Certain Nonpermanent Residents under INA § 240A(b)(1) based on the unusual hardship that his removal would cause his children. *See* [ECF No. 1-14].

[4] In response to Petitioner's counsel's email, Deportation Officer Kristy Zamir stated that ICE had not received a release request for Petitioner. [ECF No. 1-13].

had no jurisdiction over Petitioner's bond proceedings. [ECF Nos. 1-3, 1-4]. To date, Petitioner remains in ICE custody at FDC. [ECF No. 1].

> **B.      Petitioner's Habeas Petition**

On March 17, 2026, Petitioner filed the Petition alleging five counts: Violation of Fifth Amendment Due Process (Count I); Violation of Fifth Amendment Substantive Due Process (Count II); Unlawful Detention Beyond Statutory Authority (Count III); Arbitrary and Unreasonable Detention (Count IV); and Violation of the INA: Request for Relief Pursuant to *Maldonado Bautista* (Count V).[5] *Id*. Petitioner argues that his prolonged detention without a bond hearing violates the Fifth Amendment and the INA and asks this Court to order an individualized bond hearing. *Id*. On March 30, 2026, Respondents filed a Response in Opposition to the Petition, arguing that Petitioner is not entitled to an individualized bond hearing because Petitioner is detained under 8 U.S.C. § 1225(b)(2), not § 1226(a). [ECF No. 5].

## II.      LEGAL STANDARD

District courts may grant writs of habeas corpus if a person is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(a), (c)(3). Indeed, "[h]abeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). In *Zadvydas v. Davis*, the Supreme Court reaffirmed that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" immigration detention. 533 U.S. 678, 688 (2001). And courts in this District have held that this Court has jurisdiction over challenges involving whether a petitioner is detained subject to § 1225(b)(2) or to § 1226(a). *See, e.g.*, *Similien v. Warden, Federal Detention Center, Miami*, No. 26-CV-21739, 2026 WL 900078, at *2 (S.D. Fla. Apr. 2, 2026); *Chamsadine v. Assistant Field*

---

[5] Petitioner also alleged a sixth claim for relief titled "Attorney's Fees Under the Equal Access to Justice Act." [ECF No. 1].  A request for attorney's fees, however, is not a claim.

*Director Warden*, No. 26-21487-CV, 2026 WL 746400, at *1 (S.D. Fla. Mar. 17, 2026).

Section 1225(b) governs the inspection of noncitizen applicants for admission. *See* 8 U.S.C. § 1225(b). An "applicant for admission" is an "alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). Detention for noncitizen applicants for admission under § 1225(b)(2) is mandatory. *See Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (noting § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin"). For that reason, a noncitizen applicant for admission detained under § 1225(b)(2) is ineligible for bond. *See, e.g.*, *Carvajal Bautista v. U.S. Immigr. & Customs Enf't*, No. 1:26-CV-22191, 2026 WL 925590, at *2 (S.D. Fla. Apr. 6, 2026).

Section 1226, on the other hand, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *See Jennings*, 583 U.S. at 289 (emphasis added). "Section 1226(a)'s default rule permits the Attorney General to issue warrants for the arrest and detention of these aliens pending the outcome of their removal proceedings." *Id.* at 281; *see also* 28 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). "The Attorney General 'may release' these aliens on bond" unless they "fall[] into one of the enumerated categories" in § 1226(c) "involving criminal offenses and terrorist activities." *See Jennings*, 583 U.S. at 281 (quoting § 1226(a)(2)). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306; *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

Put simply, § 1226(a) "establishes a discretionary detention framework," which is "unlike the mandatory detention framework of § 1225(b)(2)." *See Carvajal Bautista*, 2026 WL 925590, at

4

*2 (quotation marks omitted); *Aguilar Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025). Congress explained the basis for these different detention frameworks when it determined in 1996 that "noncitizens already residing in the U.S." have "more substantial due process rights" than "noncitizens recently arriving." *See Aguilar Merino*, 2025 WL 2941609, at *3. In the thirty years since then, federal courts and agencies have uniformly held that § 1226(a) governs the detention of noncitizen residents, while § 1225(b)(2) applies to noncitizens arriving at an entry point. *See id.*

Indeed, even ICE's own agency, DHS, interpreted the statutes this way until a July 2025 policy change. *See id.* Pursuant to the DHS's new policy, however, ICE has been instructed to treat noncitizen residents "in the same manner that 'arriving aliens' have historically been treated," which means mandatory detention and no eligibility for a bond hearing. *See id.* (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025)); *Carvajal Bautista*, 2026 WL 925590, at *2. "Following this interpretation, the BIA held" that an Immigration Judge "had no authority to provide a bond hearing to a noncitizen" who "had been living in the United States for years without admission or parole" because he "is an applicant for admission under § 1225(b)(2)" and "subject to mandatory detention." *Carvajal Bautista*, 2026 WL 925590, at *2; *see also Yajure Hurtado*, 29 I. & N. Dec. at 228 (adopting DHS's new interpretation).

But "District Courts have overwhelmingly rejected the BIA's interpretation." *Carvajal Bautista*, 2026 WL 925590, at *2. That includes courts in this District, many of which have concluded that DHS's abrupt shift in interpretation "runs afoul of the statutes' legislative history, plain meaning, and interpretation by courts in" six Circuits over the last three decades. *See, e.g.*, *Aguilar Merino*, 2025 WL 2941609, at *3. Those courts have instead adhered to the interpretation

5

supported by a "plain reading" of § 1225(b)(2) and § 1226(a), *see id.*, which is that the detention of noncitizens encountered when they are already living in the United States "is governed by § 1226(a) and not § 1252(b)(2)," *see Carvajal Bautista*, 2026 WL 925590, at \*3. *But see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506–08 (5th Cir. 2026) (adopting DHS's new interpretation); *Avila v. Bondi*, 170 F.4th 1128, 1137–38 (8th Cir. 2026) (same).

## III.    ANALYSIS

The core disagreement between Petitioner and Respondent is whether Petitioner is detained under § 1225(b)(2), and is thus ineligible for bond, or under § 1226(a), which allows for release on bond. This is a hotly contested question that is currently dividing courts throughout the country. This Court, however, has already answered it: noncitizens who have "been living in the United States" for years before being detained are "governed by § 1226(a) and not § 1252(b)(2)." *See, e.g.*, *Carvajal Bautista*, 2026 WL 925590, at \*3. Those noncitizens are "therefore entitled to a bond hearing." *See id.* The Second Circuit agrees, recently holding that "Section 1225(b)(2)(A) does not apply to [] noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." *Cunha v. Freden*¸ No. 25-3141-pr, 2026 WL 1146044, at \*2 (2d Cir. Apr. 28, 2026) (noting that "even if the government's newfound interpretation of Section 1225(b)(2)(A) were plausible—and it is not—we would nonetheless reject it based on our obligation to construe these statutes in a manner that would avoid the serious constitutional questions attendant to what would be the broadest mass-detention-without-bond mandate in our Nation's history for millions of noncitizens.").

The Court sees no reason to depart from that holding here.[6] Respondent detained Petitioner,

---

[6] The Court acknowledges the recent decisions by the Fifth and Eighth Circuits that agreed with Respondent's position. *See Buenrostro-Mendez*, 166 F.4th at 506–08; *Avila*, 170 F.4th at 1137–38. Of course, those decisions are "not binding

who has lived in the United States since 2003, after he had an encounter with state law enforcement in Palm Beach County, not at the border or the port. That makes Petitioner a noncitizen resident, not an arriving alien or an applicant for admission. As a result, the Petition is governed by § 1226(a) not § 1225(b)(2), and Petitioner is entitled to a bond hearing under § 1226(a).

Accordingly, Petitioner's claims are granted in part. The Court declines to reach the merits of Petitioner's due process claims regarding the length of his detention or deliberate indifference to his medical needs as the Court is granting  his request for a bond hearing. *See, e.g.*, *Nguyen*, 2025 WL 3451649, at *4 (declining to reach the merits of the petitioner's due process claim because it granted the requested relief in other counts but allowing the petitioner to reassert its due process claim if the respondents do not provide a bond hearing). If Respondents do not comply with this Order by providing Petitioner a bond hearing under § 1226(a), Petitioner may renew his claims.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED:**

(1) Petitioner Eligio Haroldo Chun Calel's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, [ECF No. 1], is **GRANTED in part**. The Court finds that Petitioner's detention falls under 8 U.S.C. § 1226(a).

(2) Respondent shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) on or before **May 19, 2026** or otherwise release Petitioner.

(3) **On or before May 21 2026**, Respondent shall file a Status Report informing the Court

---

here, and" they "contradict[] the vast majority of district court opinions addressing the issue." *Lobovillalobos v. Hardin*, No. 2:26-cv-00446, 2026 WL 621380, at *2 n.1 (M.D. Fla. Mar. 5, 2026); *see also Buenrostro-Mendez*, 166 F.4th at 509 (Douglas, J., dissenting) (criticizing the decision as "totally unsupported"). Therefore, they do not persuade this Court. This issue is currently on appeal before the Eleventh Circuit in *Hernandez Alvarez v. Warden, Federal Detention Ctr Miami, et al.*, No. 25-14065 (11th Cir.) and *Cerro Perez v. Assistant Field Dir., et al.*, No. 25-14075 (11th Cir.).

of whether Petitioner was given a bond hearing, the outcome of Petitioner's bond hearing, and the status of matters relevant to the Petition.

(4) All Respondents aside from E.K. Carlton, Warden of FDC, are dismissed from this action. *See* 28 U.S.C. § 2243; *Rumsfeld*, 542 U.S. at 439, 447; *Jackson*, 589 F. App'x at 491 n.1.

(5) This case is **CLOSED** for administrative purposes.

(6) The Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should any additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of April, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE